UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-00036-TBR

GINI G. GRACE                                                                        PLAINTIFF

v.

STATE OF KENTUCKY, et al.                                                 DEFENDANTS

MEMORANDUM OPINION

There are nine motions pending before the Court in this case:

DN 6: Motion to Dismiss by Defendant State of Kentucky,

DN 10: Motion to Amend/Correct Complaint by Plaintiff,

DN 11: Motion for Leave to Amend Complaint by Plaintiff,

DN 13: Motion to Dismiss by Defendant United States Army Corps of Engineers,

DN 14: Motion to Dismiss by Defendant Department of Homeland Security, Federal Emergency

Management Agency,

DN 15: Motion to Dismiss by Defendant Tennessee Valley Authority,

DN 16: Motion for Extension of Time to File a Response by Plaintiff,

DN 17: Motion for Extension of Time to File a Response by Plaintiff, and

DN 20: Motion for Extension of Time to File a Response by Plaintiff.

For the reasons stated below, the Court will issue an Order and Judgment contemporaneous to this

Memorandum Opinion dismissing all claims and terminating the action.

## I.    Plaintiff's Complaint

*Pro se* Plaintiff Gini G. Grace filed this action naming as Defendants the State of Kentucky,

Office of Attorney General; Department of Homeland Security, Federal Emergency Management

Agency (FEMA); the Tennessee Valley Authority (TVA); the United States Army Corp of

1

Engineers (USACE); and the United States of America. [DN 1 at 1]. Plaintiff states that she brings this action because of the lack of federal assistance for a federal disaster declared on April 17, 2019. *Id*. at 2. She alleges causes of action under the Federal Tort Claims Act, the Stafford Act, and the Fifth Amendment to the United States Constitution. *Id*. at 4. Plaintiff also alleges that the Court has jurisdiction under the Administrative Procedures Act. *Id*.

Plaintiff alleges that in February and March 2019, Kentucky experienced severe weather that led to heavy rainfall and widespread flooding. *Id*. Plaintiff says that early during the morning of February 24, 2019, the severe flooding forced her to evacuate her home with the help of emergency responders. *Id*. at 6. Plaintiff also says that following her evacuation, she had to stay in a local hotel, which she could not afford, because there were no shelters available and she had nowhere else to go. *Id*. at 7. Plaintiff claims that she lost the contents in her home, that her home suffered a great deal of damage, that the damage to her home exceeded her insurance coverage, and that she suffered emotional and financial stress because of the circumstances brought about by the flooding. *Id*. at 8. In her complaint, Plaintiff also describes that during spring 2019, she contacted various representatives in the local, state, and federal governments, making numerous appeals for individual assistance to no avail. *Id*. at 13. The primary injury Plaintiff complains of is her failure to receive individual assistance. *Id*. at 2.

## II.    Defendant State of Kentucky

### a.  Claims

Plaintiff seems to argue that a claim should lie against the State of Kentucky because state leaders could and should have requested financial assistance for individual Kentuckians from the federal government through the Stafford Act, and the state did not do so. [DN 1 at 24-25] ("No federal assistance was requested by the state of Kentucky. The state did nothing to assist the

Kentucky flood victims although there were statutory laws in place that no money was ever appropriated to."). Plaintiff also complains that that State of Kentucky has never used KRS 39A.300 for disaster relief funding. *Id.* ("Although the statute has been available for fifteen years, it was not utilized to help any of the Kentucky flood victims."). Thus, Plaintiff's allegations against Defendant State of Kentucky are that the state did not properly use the Stafford Act to solicit money for Kentucky flood victims and that the state did not properly use Kentucky's Disaster Relief Funding Program statute, KRS 39A.300, to provide financial assistance to Kentucky flood victims.

### b. Defendant's Motion to Dismiss and Plaintiff's Motions for Leave to Amend Complaint

Defendant State of Kentucky offers Eleventh Amendment sovereign immunity and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) as separate grounds for dismissal. [DN 6]. The Plaintiff filed two responses to Defendant State of Kentucky's motion to dismiss—the first at DN 7 and the second at DN 8—but the Court has determined that the second filing is merely a duplicate of the first filing. Defendant State of Kentucky replied. [DN 9]. Thus, the matter is ripe for adjudication.

### i. Eleventh Amendment

First, Defendant State of Kentucky argues that Plaintiff's claims against it must be dismissed because the Eleventh Amendment protects the state from suit. [DN 6 at 4]. Plaintiff responds by arguing first that the Eleventh Amendment does not bar suit because there are exceptions to Eleventh Amendment sovereign immunity, including the exception established in *Ex Parte Young*, 209 U.S. 123 (1908). [DN 8 at 5]. Then, Plaintiff discusses a Fourteenth Amendment Due Process claim that was not set out in her complaint. *Id.* at 5-10. The Court agrees

with Defendant that Plaintiff's response to the motion to dismiss is not the proper place for Plaintiff to assert a new claim not included in her complaint. However, the Court need not decide whether to allow Plaintiff's Fourteenth Amendment claim to proceed, because even if it did, Plaintiff's claims against the State of Kentucky are barred by the Eleventh Amendment.

### A.  Standards

"In our constitutional scheme, a federal court generally may not hear a suit brought by a person against a nonconsenting state." *Allen v. Cooper*, 140 S.Ct. 994, 1000 (2020). "The Eleventh Amendment and background principles of sovereignty ordinarily bar lawsuits against States and state officials." *McNeil v. Community Prob. Servs.*, 945 F.3d 991, 994 (6th Cir. 2019) (citing *Alden v. Maine*, 527 U.S. 706, 712–14 (1999)); *Courser v. Mich. House of Representatives*, 831 F. App'x. 161, 170 (6th Cir. 2020) (citing *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984)) ("[Sovereign] immunity extends to arms of the state, including the states' officers."). However, there are three exceptions to Eleventh Amendment sovereign immunity. *S & M Brands, Inc., v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). First, "[a] State may waive its sovereign immunity at its pleasure." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011) (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76, (1999)). Second, "in some circumstances Congress may abrogate [sovereign immunity] by appropriate legislation." *Id*. Finally, "*Ex parte Young* provides an exception for plaintiffs seeking prospective injunctive relief against State actors in their official capacity." *In re Flint Water Cases*, 960 F.3d 303, 332 (6th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123, 156 (1908); *S & M Brands*, 527 F.3d at 507). "In such cases, state officials are stripped of their official or representative character and thereby deprived of the State's immunity when they commit an ongoing violation of federal law." *Del. River Joint Toll Bridge Comm'n v. Secretary Pa. Dep't of Lab. and Indus.*, No.

20-1898, 2021 WL 97430, at *3 (3rd Cir. Jan. 12, 2021) (citing *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020)). Moreover, "when plaintiffs seek an injunction to prevent prospective violations of federal law, the state's sovereign immunity does not shield its officers." *Ladd v. Marchbanks*, 971 F3d 574, 580 (6th Cir. 2020) (citing *Stewart*, 563 U.S. at 255). Thus, the *Ex Parte Young* exception to sovereign immunity "allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations . . . [b]ut the doctrine does not extend to retroactive relief or claims for money damages." *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *S & M Brands*, 527 F.3d at 507-08; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). "To determine if *Ex Parte Young* applies, we 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (internal quotation marks omitted).

## B.   Discussion

Defendant State of Kentucky argues that the Eleventh Amendment bars Plaintiff's suit against it. [DN 6 at 4-5]. Plaintiff responds that *Ex Parte Young* applies, as "the [Eleventh A]mendment does not bar suits for ongoing constitutional violations against state officials in their official capacities." [DN 8 at 5]. Plaintiff argues that "[s]ince this has not been resolved it is an ongoing constitutional violation." *Id.* Plaintiff also states that she has listed an injunction as one of the remedies she seeks, and "[t]his action would simply redress the lack of individual assistance that would not be coming out of the State treasury if the remedy was coordinated between FEMA and the Commonwealth of Kentucky." *Id.* at 9. Notably, Plaintiff's Complaint does not name any officers of Kentucky as defendants in their official capacity. [DN 1]. However, Plaintiff has filed

two Motions for Leave to Amend Complaint, DN 10 and DN 11, which the Court has determined are the same,[1] seeking to add as party defendants Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky, Michael Dossett, in his official capacity as Director of the Division of Emergency Management within the Department of Military Affairs, Former Governor Matthew G. Bevin, in his official capacity as Governor of the Commonwealth of Kentucky, and Daniel Cameron, in his official capacity as Attorney General of the Commonwealth of Kentucky. [DN 11 at 1-2]. Plaintiff's attempt to save her claims against the State of Kentucky by adding individual defendants must fail. Both the State of Kentucky and the individual officials the Plaintiff names in her motions are protected from suit by the Eleventh Amendment.

As set out above, the Eleventh Amendment provides Defendant State of Kentucky immunity from suit. Although there are exceptions to Eleventh Amendment immunity, none of the exceptions apply here. The State has not consented to suit, and the Plaintiff has not set out any claim against the State for which Congress has abrogated the State's immunity. Moreover, the *Ex Parte Young* exception does not apply.

To overcome sovereign immunity via *Ex Parte Young*, Plaintiff must seek, from state officials, prospective injunctive relief that will remedy an ongoing violation of federal law. *Boler*, 865 F.3d at 412. Plaintiff has not satisfied these requirements. First, Plaintiff did not name any state officials as defendants in her Complaint. [DN 1]. Plaintiff attempts to correct this issue in her proposed amended complaint(s). [DN 10, DN 11]. However, even if Court were to allow Plaintiff to add the state officials she proposes as defendants, the officials would be immune from suit because Plaintiff is not seeking prospective injunctive relief for an ongoing violation of federal law as required by *Ex Parte Young*. Plaintiff has not alleged an ongoing violation of federal law,

---

[1] In her response to FEMA's Motion to Dismiss, Plaintiff explains that she only intended to file one motion to amend her complaint and one amended complaint. [DN 22 at 4].

6

nor has she clearly identified what injunctive relief she seeks. *See Boler*, 865 F.3d at 412 (finding that Plaintiffs had not shown that *Ex Parte Young* doctrine should apply where the complaint merely asked for injunctive relief that the court would deem fair). Further, Plaintiff has not asked the Court for injunctive relief that is *prospective*: Plaintiff is asking the Court to right a perceived wrong based on an isolated incident in the past rather than to right a perceived wrong based on an ongoing violation of federal law. Specifically, Plaintiff is asking the Court to require the State to provide her with the individual assistance she claims she should have received under the Stafford Act, but her nonreceipt of such funding following the 2019 flooding was the result of a one-time response to an isolated event, not the result of an ongoing action. Because the Court finds that neither the *Ex Parte Young* doctrine nor either of the other exceptions to sovereign immunity apply, the State of Kentucky and the additional state officials that the Plaintiff has proposed as defendants are immune from suit. Therefore, the Court will grant Defendant State of Kentucky's Motion to Dismiss, DN 6, and deny Plaintiff's Motion for Leave to Amend Complaint, DN 11 on grounds of futility.[2] The Court will deny Plaintiff's Motion to Amend/Correct Complaint, DN 10, as moot.[3]

### ii.   Failure to State a Claim

The claims against Defendant State of Kentucky will be dismissed on the grounds of Eleventh Amendment sovereign immunity. Therefore, the Court need not address Defendant's

---

[2] Plaintiff seeks to amend her complaint to add Kentucky state officials and the United States Attorney General as defendants. The Court has determined that Plaintiff's amendment to add Kentucky state officials as defendants would be futile, as the proposed defendants would be immune from suit. Thus, the Court denies Plaintiff's Motion for Leave to Amend her Complaint, DN 11, on grounds of futility. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 244 (6th Cir. 2019) (citing *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)) ("A court need not grant leave to amend when doing so would be futile."). Plaintiff's amendment to add the United States Attorney General as a defendant is addressed below. *See infra* Section VI.

[3] The Court treats the first motion to amend the complaint as moot and the second motion to amend the complaint as the operative motion to amend the complaint. As explained above, the Court has determined that the motions are the same, and Plaintiff confirmed that she intended to file only one motion to amend her complaint. *See supra* note 1.

7

argument that the claims should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### III.   Motion to Dismiss by Defendant United States Army Corps of Engineers

Plaintiff also makes out a claim against the United States Army Corps of Engineers and the Tennessee Valley Authority for a taking in violation of the Fifth Amendment of the United States Constitution. [DN 1 at 41]. USACE argues that Plaintiff's taking claim must be dismissed for lack of subject matter jurisdiction. [DN 13 at 1]. Specifically, USACE states that the Court of Federal Claims has exclusive jurisdiction over Fifth Amendment takings claims where damages are greater than $10,000.00. USACE contends, "it is Plaintiff's burden to show that her damages do not exceed that threshold . . . [and] [s]he has not carried that burden." *Id*. at 2. USACE continues, "[t]o assert a claim under the Little Tucker Act [in a federal district court], a plaintiff must plead that her damages do not exceed $10,000." *Id*. at 3. As USACE points out, Plaintiff does not specify her damages in her complaint. However, USACE states, "[i]t is Plaintiff's obligation to show that this Court has jurisdiction, which in this case requires a showing that her damages do not exceed $10,000." *Id*. at 3-4.

Plaintiff responds by arguing that the Court does have subject matter jurisdiction under the Little Tucker Act. [DN 23 at 1]. Notably, Plaintiff states that although she did not include a specific amount of damages in her complaint, "[i]f in fact, she must assert a claim under the Little Tucker Act by pleading that her damages do not exceed $10,000.00, she would ask the court for leave to amend her complaint to reflect that." *Id*. at 1. Plaintiff still does not attempt to precisely quantify her damages in her response. Thus, the Court interprets Plaintiff's response as an attempt to stipulate to less than $10,000 in damages with respect to her Fifth Amendment taking claim so that this Court can exercise subject matter jurisdiction over the claim under the Little Tucker Act.

USACE replied, reiterating its position that Plaintiff's failure to properly allege damages warrants dismissal for lack of subject matter jurisdiction. [DN 25 at 1]. USACE goes on to argue that even if the Court were to permit the Plaintiff to amend her complaint, any such amendment would be futile because it would not withstand a Rule 12(b)(6) motion to dismiss. *Id*. at 2. USACE also argues that Plaintiff could not properly plead the required amount in damages anyway, because the sources of damages Plaintiff cites in her response are unrelated to her taking claim. *Id*. at 3-5. This matter is ripe for adjudication.

### a. Standards

A party may move to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Federal district courts do not have subject matter jurisdiction to consider just-compensation claims for money damages in excess of $10,000 against the United States. Rather the Tucker Act vests jurisdiction over such claims in the Court of Federal Claims." *Brott v. United States*, 858 F.3d 425, 428 (6th Cir. 2017). As the Sixth Circuit explained:

> Together, the Tucker Act and the Little Tucker Act operate to vest in the Court of Federal Claims subject matter jurisdiction to consider non-tort claims for money damages against the United States in excess of $10,000 . . . the Tucker Act vests in the Court of Federal Claims exclusive jurisdiction to hear such claims.

*Id*. at 429 (emphasis in original). However, federal district courts have concurrent jurisdiction with the United States Court of Federal Claims over non-tort claims for money damages, including Fifth Amendment takings claims, where damages do not exceed $10,000. 28 U.S.C. § 1346(a)(2); *Brott*, 858 F.3d at 428-29. Finally, "where subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Medved v.*

*U.S. Dep't of Just.*, No. 18-3626, 2019 WL 3010790, at *2 (6th Cir. June 28, 2019) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

### b. Discussion

This Court only has subject matter jurisdiction over Plaintiff's Fifth Amendment taking claim against USACE under the Little Tucker Act if Plaintiff's damages on the claim do not exceed $10,000. 28 U.S.C. § 1346(a)(2). Plaintiff has not stated what her damages are or otherwise attempted to show that this Court may exercise jurisdiction based on the value of her taking claim. It is Plaintiff's burden to prove that this Court has subject matter jurisdiction in the face of the defendant's motion to dismiss for lack of subject matter jurisdiction. *See Medved*, WL 3010790, at *2 (citing *Rogers*, 798 F.2d at 915).

As noted above, Plaintiff's response to USACE's motion included an offer to amend her complaint to assert that her damages were less than $10,000, and the Court interprets Plaintiff's offer as an attempt to stipulate to less than $10,000 in damages with respect to her Fifth Amendment taking claim. Thus, the Court must determine whether Plaintiff should be permitted to stipulate to such a damages cap so that she can keep her claim in this Court. Although it appears that courts in this circuit have not addressed this specific issue, courts in this circuit have addressed damages cap stipulations in the context of diversity jurisdiction under 28 U.S.C. § 1332(a). Typically, in those cases, after a defendant removes a case from state court to federal court, a plaintiff will attempt to stipulate that their damages are less than $75,000, and that they will not seek or accept damages greater than $75,000, thereby attempting to deprive the action of the amount-in-controversy requirement for diversity jurisdiction. *See, e.g.*, *King v. Trader Joe's East, Inc.*, No. 3:20-cv-326-RGJ, 2020 WL 8184423, at *1-2 (W.D. Ky. Nov. 16, 2020). Of course, the stipulating plaintiff's primary goal in those cases is to keep the action or claim out of a federal

10

district court generally, where here, Plaintiff's purpose in stipulating to less than $10,000 in damages is to keep her Fifth Amendment taking claim out of the Court of Federal Claims. Despite this difference, the Court notes an issue that arises in both contexts. As this Court explained in *Agri-Power, Inc. v. Majestic JC, LLC*, "postremoval stipulations reducing the amount in controversy below the jurisdictional threshold 'are generally disfavored because [i]f the plaintiff were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable.'" No. 5:13–CV–00046–TBR, 2013 WL 3280244, at *3 (W.D. Ky. June 27, 2013) (quoting *Proctor v. Swifty Oil Co.*, 2012 WL 4593409, at *3 (W.D. Ky. Oct. 1, 2012)) (internal quotation marks and citation omitted). To minimize the incidence of jurisdictional manipulation, courts require first that such stipulations amount to "clarifications" rather than mere changes in or reductions from the amount in controversy alleged in the complaint, and second, that such stipulations are unequivocal such that "the plaintiff has no room to escape the bounds of [the stipulation's] restrictions." *King*, 2020 WL 8184423, at *2 (quoting *Jenkins v. Delta Air Lines, Inc.*, NO. 3:18-CV-244-CRS, 2018 WL 6728571, at *5 (W.D. Ky. Dec. 21, 2018)). The Court applies the same criteria used for diversity action post-removal stipulations to the instant case. Doing so, the Court finds that Plaintiff's attempted stipulation does not satisfy either criterion: Plaintiff's proposed stipulation is neither a mere clarification nor is it unequivocal. Furthermore, Plaintiff has been forthright in stating that the purpose of her stipulating to a lower damages amount is so that her claim can remain in this Court. [DN 23 at 1] ("[F]or the sake of judicial and court economy [Plaintiff] did not bifurcate her claim to go into two different courts. She attempted to present them in a cohesive manner, so that they could all be heard and addressed in one forum, the United States District Court. If in fact, she must assert a claim under the Little Tucker Act by pleading that her damages do not exceed

11

$10,000.00, she would ask the court for leave to amend her complaint to reflect that."). Accordingly, the Court concludes that Plaintiff's attempted stipulation does not prove the amount-in-controversy required for this court to exercise subject matter jurisdiction over the taking claim.

Ultimately, "where subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Medved*, WL 3010790, at \*2 (citing *Rogers*, 798 F.2d at 915). And here, Plaintiff must show that the amount-in-controversy as to her taking claim is less than $10,000 for this Court to exercise subject matter jurisdiction. 28 U.S.C. § 1346(a)(2); *Brott*, 858 F.3d at 428-49. Plaintiff's taking claim cites damages for permanent destruction to her home and to her personal property in addition to loss of use and enjoyment of her home and personal property. The Court agrees with USACE that "it appears the claimed damages far exceed $10,000," and Plaintiff has not carried her burden to prove otherwise. Thus, the Court finds that it does not have subject matter jurisdiction over Plaintiff's Fifth Amendment taking claim.

### c. Dismissal or Transfer

28 U.S.C. § 1631, the relevant transfer statute, instructs that when a Court determines that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed." "Many courts have read § 1631 as creating a presumption in favor of transfer, especially when the appealing party had 'some arguable basis' for thinking that it appealed to the proper court." *Wesley Corp. v. Zoom T.V. Prods.*, 749 F. App'x 449, 450 (6th Cir. 2019) (citing *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009)). The statute confers broad discretion to the trial court in deciding whether to dismiss or transfer the claim. *Stanifer*, 564 F.3d at 456-57.

USACE argues that Plaintiff's claim should be dismissed without prejudice, and not transferred, because Plaintiff did not have a "colorable basis" for filing the claim in this Court. [DN 13 at 2, 4]. Plaintiff has only asked that the action remain in this Court—she has not requested transfer in the event this Court determines it does not have subject matter jurisdiction. [DN 23 at 1]. Because it is unclear whether Plaintiff had a defensible basis for filing the claim in this Court, and because the Plaintiff is proceeding *pro se*,[4] the Court finds that Defendant USACE's proposed disposal of the claim is appropriate. In the interests of justice, the Court will dismiss the claim without prejudice, so that plaintiff may refile this claim in the Court of Federal Claims. Accordingly, USACE's motion to dismiss will be granted, and Plaintiff's taking claim will be dismissed without prejudice.

## IV.   Motion to Dismiss by Federal Emergency Management Agency (FEMA)

Most of the portion of Plaintiff's Complaint dedicated to claims against FEMA recites various facts related to and procedures set out in federal statutes and regulations pertaining to federal disaster assistance. [DN 1 at 26-41]. However, as Defendant FEMA states, "Plaintiff seems to assert claims against Defendant FEMA under (1) the Fifth Amendment's Due Process Clause, (2) the Robert. T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121, et seq. (the Stafford Act), and (3) the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (the APA)." [DN 14 at 1]. FEMA has moved the Court to dismiss the claims against it for lack of standing, lack of subject matter jurisdiction, and failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [DN 14]. Plaintiff responded, DN 22, and Defendant replied, DN 24. Thus, this matter is ripe for adjudication.

---

[4] *See Witcher v. Federal-Mogul Products, Inc.*, NO. 1:14-CV-00042-JRW, 2020 WL 1813711, *1-2 (W.D. Ky. Jan. 30, 2020) (quoting *Martin v. Kentucky State Penitentiary*, No. 5:15CV-P232-TBR, 2016 WL 4599924, *2-3, 2016 U.S. Dist. LEXIS 118760 *8-9 (W.D. Ky. Sept. 1, 2016)) (explaining that *pro se* litigants are afforded some latitude in sophisticated legal issues).

### a. Standing

First, FEMA argues that each of the claims against it should be dismissed because Plaintiff lacks standing. [DN 14 at 8]. Specifically, FEMA claims that the injury Plaintiff alleges "is not traceable to any action or lack of action on the part of FEMA." *Id*. As stated above, Plaintiff's claimed injury is her failure to receive individual disaster funding. FEMA argues that nonreceipt of individual assistance is not traceable to FEMA because FEMA only provides assistance as directed by the President, and here, the President did not and could not direct the distribution of individual assistance because Kentucky's governor did not request it. *Id*. at 8-9. Therefore, FEMA argues, there was no conduct on its part that led to Plaintiff's alleged injury.

In her response, Plaintiff acknowledges that the state did not request individual assistance. [DN 24 at 6]. Plaintiff states, "FEMA infers that the State never asked for individual assistance, so they did not turn them down. The State insists that FEMA said they were unable to grant individual assistance, and therefore they are unable to request assistance of that nature." *Id*. at 6-7. In her Complaint, and again in her response to FEMA's motion to dismiss, Plaintiff quotes an email or letter that she says was sent from the Kentucky Governor's office, which states: "The Governor issued a state of emergency following flooding in Kentucky. Following that, FEMA began their assessment and they determined that they were unable to grant Individual Assistance (IA) for McCracken County based on that assessment. Therefore the Commonwealth is unable to request assistance of this nature." *Id*. at 13. Plaintiff argues that this shows that FEMA denied the state of Kentucky individual assistance before it was requested. *Id*. Plaintiff also states that the Kentucky Governor did not ask for individual assistance because FEMA provided the Governor's Office incorrect information. *Id*. at 16.

### i. Standards

"To reach the merits of a case, an Article III court must have jurisdiction." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950-51 (2019). "A party seeking to invoke a federal court's jurisdiction must have standing to do so." *Priorities USA v. Nessel*, 978 F.3d 976, 979 (6th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A plaintiff bears the burden of establishing standing to bring their claim at the pleading stage. *Primus Group, LLC v. Smith & Wesson Corp.*, No. 19-3992, 2021 WL 423741, at *1, 2 (6th Cir. Feb. 8, 2021) (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016)). "When a plaintiff fails to establish standing, his complaint is subject to dismissal for lack of subject-matter jurisdiction." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019) (citing *Bethune-Hill*, 139 S. Ct. at 1950-51). "When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court must accept all material allegations of the complaint as true." *Phillips*, 2019 WL 7372704, at *1 (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002)).

"Standing has three elements: 'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 251 (6th Cir. 2020) (quoting *Spokeo*, 136 S.Ct. at 1547). In showing that the alleged injury is fairly traceable to a defendant's conduct, the plaintiff must "demonstrate a causal connection between his injury and the defendant's conduct." *Binno v. American Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016). Though a plaintiff need not demonstrate proximate cause to satisfy the traceability requirement, "standing . . . is generally more difficult to establish when the injury is indirect." *Parsons v. U.S.*

*Dep't of Just.*, 801 F.3d 701, 713 (6th Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 n. 6, (2014); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497, (2009); *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

### ii. Discussion

The issue the Court must decide to determine whether Plaintiff has standing to bring her claims against FEMA is whether there was any action or inaction on FEMA's part that led to Plaintiff's nonreceipt of individual assistance under the Stafford Act. Put differently, the question is whether there is a causal connection between Plaintiff's alleged injury and FEMA's conduct. The relevant statutory and regulatory provisions provide guidance.

The Stafford Act provides federal assistance to states when disaster strikes. 42 U.S.C. § 5121 *et seq*. Assistance under the Stafford Act is triggered when the governor of an affected state requests that the President declare an emergency or a major disaster. 42 U.S.C. §§ 5170, 5190; 44 C.F.R. §§ 206.35(c), 206.36(c). A governor's request for an emergency declaration or a major disaster declaration will generally result in a declaration or a denial of the request for a declaration. 44 C.F.R. §§ 206.38. The governor's request for an emergency or emergency disaster declaration must include an explanation of the *type* and amount or extent of federal assistance requested. 44 C.F.R. §§ 206.35(c)(4), 206.36(c)(4). One type of disaster assistance authorized through the Stafford Act is individual assistance. 42 U.S.C. § 5174. This is the type of assistance the Plaintiff here claims she should have received. Further, after the governor makes his request for assistance, the Assistant Administrator for the Disaster Assistance Directorate "may authorize all, or only particular types of, supplementary Federal assistance requested by the Governor." 44 C.F.R. § 206.40(a). In this case, Kentucky's governor did not request individual assistance.

16

FEMA argues that Plaintiff's injury was caused by Kentucky's governor, and not FEMA, because the governor did not request individual assistance in his request for an emergency declaration. The Court agrees. Even taking as true Plaintiff's contentions that FEMA informally and incorrectly advised the state of Kentucky about its eligibility for individual assistance, the responsibility to request individual assistance lies with the affected state's governor. 44 C.F.R. §§ 206.35(c)(4), 206.36(c)(4). Thus, Plaintiff's nonreceipt of individual assistance cannot be traced to FEMA's conduct in a manner that amounts to a causal connection.

The Court reaches this conclusion under the guidance of *Binno*, 826 F.3d at 344-45. There, Binno claimed that the American Bar Association (ABA) caused his alleged injury of being forced to take the Law School Admissions Test (LSAT), an examination he claimed "discriminates against blind and visually impaired persons," causing him emotional distress and negatively affecting his exam performance. *Id*. at 344. Binno claimed that the injury was traceable to the ABA because the ABA "effectively compels law schools to require the LSAT." *Id*. The district court determined that Binno did not have standing because he had not established a causal connection between his injury and the ABA's conduct. *Id*. The Sixth Circuit agreed, reasoning, "the ABA does not actually 'mandate' use of the LSAT and, moreover, nothing in the standards gives the ABA authority to prescribe its content." *Id*. at 345. Accordingly, Sixth Circuit defended the district court's finding that Binno had sued the wrong party, concluding that the Law School Admissions Council (LSAC) and the law schools to which Binno applied were responsible for the content of the LSAT and the weight the LSAT was given in Binno's applications. *Id*. Although the ABA required all law school applicants to take an admissions test and accorded the LSAT presumptive validity, the LSAC and the law schools to which Binno applied were the parties responsible for Binno's injury.

Similarly, here, while FEMA may have played a role in advising Kentucky's governor about the type of federal assistance he could or should seek, the governor is the party required by law to appeal to the president for individual assistance before such assistance may be granted. 44 C.F.R. §§ 206.35(c)(4), 206.36(c)(4), 206.40(a). Nothing precluded the state from rejecting FEMA's advice and requesting individual assistance against FEMA's recommendation. Therefore, the Court finds that Plaintiff has not established a causal connection between her injury and FEMA's conduct sufficient to demonstrate the fair traceability requirement of Article III standing. Because Plaintiff has not established standing to bring her claims against FEMA, the Court will dismiss the claims against FEMA. Accordingly, FEMA's Motion to Dismiss, DN 14, is granted. Having considered Plaintiff's Response, DN 22, Plaintiff's Motion for Extension of Time to File a Response, DN 20, is denied as moot. Because the Court dismisses Plaintiff's claims against FEMA due to lack of standing, it need not address FEMA's other argued grounds for dismissal.

## V.    Motion to Dismiss by Defendant Tennessee Valley Authority

Plaintiff brings her Fifth Amendment taking claim jointly against both the United States Army Corps of Engineers and the Tennessee Valley Authority. [DN 1 at 41-43]. Defendant TVA has moved the Court to dismiss the claim against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [DN 15-1 at 1]. However, since the Court has determined that the Court of Federal Claims has exclusive jurisdiction over Plaintiff's taking claim, Defendant TVA's Motion to Dismiss, DN 15, will be denied as moot, though Plaintiff's claim against TVA is dismissed without prejudice. Accordingly, Plaintiff's Motions for Extension of Time to File Response to TVA's Motion to Dismiss, DN 16 and 17, will also be denied as moot.

## VI.     Other Parties

In her Complaint, DN 1, the Plaintiff includes the United States of America as a listed defendant. [DN 1 at 1]. In her Motions to Amend the Complaint, DN 10 and DN 11, Plaintiff seeks to add as defendants an unnamed Assistant United States Attorney for the Western District of Kentucky and the United States Attorney General. [DN 11-1 at 2]. The Plaintiff does not make out any claims against the United States, an Assistant United States Attorney for the Western District of Kentucky, or the Attorney General for the United States. However, the Plaintiff does state that she lists the Attorney General for the United States as a defendant because it "is required in an action against any government agency." [DN 11 at 2].

In accordance with Federal Rule of Civil Procedure 21, the Court will terminate the United States as a party, as Plaintiff has not included any claims against it. The Court also takes note that in denying Plaintiffs Motions to Amend the Complaint, DN 10 and DN 11, the unnamed Assistant United States Attorney for the Western District of Kentucky and the Attorney General for the United States of America will not be added as defendants to the action. As USACE argues in its Motion to Dismiss, "the Attorney General and United States Attorney's Office for the Western District of Kentucky only need to be served with a copy of Plaintiff's complaint, they do not need to be named as parties to the action." [DN 13 at 4, n.2].

## VII.    Conclusion

**For the reasons set forth above:**

DN 6: Motion to Dismiss by Defendant State of Kentucky is **GRANTED**,

DN 10: Motion to Amend/Correct Complaint by Plaintiff is **DENIED AS MOOT**,

DN 11: Motion for Leave to Amend Complaint by Plaintiff is **DENIED**,

DN 13: Motion to Dismiss by Defendant United States Army Corps of Engineers is **GRANTED**,

DN 14: Motion to Dismiss by Defendant Department of Homeland Security, Federal Emergency Management Agency is **GRANTED**,

DN 15: Motion to Dismiss by Defendant Tennessee Valley Authority is **DENIED AS MOOT**,

DN 16: Motion for Extension of Time to File a Response by Plaintiff is **DENIED AS MOOT**,

DN 17: Motion for Extension of Time to File a Response by Plaintiff is **DENIED AS MOOT**, and

DN 20: Motion for Extension of Time to File a Response by Plaintiff is **DENIED AS MOOT**.

Furthermore, the United States is terminated as a party to the action. The Court will enter a separate Order and Judgment contemporaneous to this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 22, 2021

**cc: counsel**

**Gini G. Grace**
2365 Said Road
Symsonia, KY 42082
270-851-7775
PRO SE